# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAULA A. LOPEZ, ) | |
| ) | No. 16 C 10532 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paula A. Lopez appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## Background

Plaintiff filed an application for benefits on January 22, 2013. (R. 97.) Her application was denied initially on May 8, 2013, and again on reconsideration on October 25, 2013. (R. 74, 97.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 26, 2015. (R. 17-73.) On May 5, 2015, the ALJ issued a decision denying plaintiff's application. (R. 122-41.) The Appeals Council denied review (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

---

[1]On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited May 10, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether she is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of October 1, 2006. (R. 124.) At step two, the ALJ found that plaintiff had the severe impairments of "asthma; dermatitis; depression and anxiety." (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 125.) At step four, the ALJ found that plaintiff did not have any past relevant work but had the RFC to perform light work with additional restrictions, and thus was not disabled. (R. 126-27, 140-41.)

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Chadha, who has treated plaintiff since November 2006. (*See* R. 1074.) Dr. Chadha's "opinion" consists of a list of plaintiff's conditions (asthma, anxiety, depression, GERD [Gastroesophageal Reflux Disease], and sleeping difficulty) and symptoms (difficulty breathing, feelings of anxiousness, sadness and depression, abdominal pain, and inability to sleep), and the following statement: "[Plaintiff] is mostly limited by her mental health. (Depression) I don't think she can handle 40 hr a week. She has underlying lung disease as well, severe asthma." (R. 1074-75.)

Whether this cursory statement even constitutes a "medical opinion" is debatable, though the ALJ characterized it as one. *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Presuming Dr. Chadha's statement is a "medical opinion," however, an ALJ must give a treating physician's opinion controlling weight only if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

3

[the] case record." 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).

Though the ALJ acknowledged that Dr. Chadha was plaintiff's "long-term treat[er]," the ALJ gave "little weight" to Dr. Chadha's opinion because:

> [It] is not supported by treatment notes or the record overall. . . . [W]hile Dr. Chadha noted the claimant's impairments of anxiety and depression, there is no evidence that Dr. Chadha performed any psychological or mental evaluation or testing of the claimant's functioning or limitations with respect to these conditions. There is no indication he treated the claimant for these conditions aside from prescribing medication for the claimant as he referred the claimant to psychiatry . . . . Dr. Chadha noted that the claimant's physical impairments are not disabling . . . . Further, the opinion is vague, unsupported and is couched as a purely speculative guess compared to the definitiveness of [the opinions of the medical expert] Dr. Munoz and the DDS state agency experts.

(R. 139.)

Plaintiff argues that this assessment is flawed because it does not explicitly address every factor set forth in the regulations. The Seventh Circuit, however, in *Schreiber v. Colvin*, rejected this argument:

> Schreiber also argues that the ALJ failed to properly analyze Dr. Belford's opinion because he did not specifically address each factor set forth in 20 C.F.R. § 404.1527. When an ALJ chooses to reject a treating physician's opinion, she must provide a sound explanation for the rejection. *See* 20 C.F.R. § 404.1527(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Here, while the ALJ did not explicitly weigh each factor in discussing Dr. Belford's opinion, his decision makes clear that he was aware of and considered many of the factors, including Dr. Belford's treatment relationship with Schreiber, the consistency of her opinion with the record as a whole, and the supportability of her opinion. *See* 20 C.F.R. § 404.1527(c). While we may not agree with the weight the ALJ ultimately gave Dr. Belford's opinions, our inquiry is limited to whether the ALJ sufficiently

4

> accounted for the factors in 20 C.F.R. § 404.1527, *see Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527), and built an "accurate and logical bridge" between the evidence and his conclusion. We find that deferential standard met here.

519 F. App'x 951, 959 (7th Cir. 2013). As in *Schreiber*, the ALJ's opinion in this case shows that he "considered many of the [regulatory] factors." *Id.* Thus, his failure to address each factor explicitly is not a basis for overturning his decision.

Alternatively, plaintiff argues that the ALJ improperly concluded that Dr. Chadha's opinion is refuted by the record. On the contrary, plaintiff says, Dr. Chadha's own records show that he "regularly observed that [plaintiff] suffered from anxiety, depression, and panic attacks." (Pl.'s Br. Supp. Mot. Reverse Comm'r's Dec. at 11.) While that is true, Dr. Chadha also regularly observed that plaintiff's mental impairments were mild and controlled by medication. (*See* R. 870 (noting that plaintiff "has been taking xanax as needed for her anxiety"); R. 928 ("She is feeling well currently. . . . She has relief with ativan for anxiety. She uses it less than one time a day on average."); R. 947 ("She continues to have some anxiety and some mild depression"); R. 959 ("[Patient] will continue xanax as needed. No adjustment in dose."); R. 975 (noting that plaintiff experienced "worsening anxiety" when she went on a trip, but "does not feel depressed").) Thus, Dr. Chadha's treatment notes do not support his statement that plaintiff's mental impairments are disabling.

Rather, Dr. Chadha's treatment notes support the conclusion that plaintiff suffers from asthma, dermatitis, depression, and anxiety. (R. 124.) This conclusion, which is also supported by other medical evidence, is not in dispute. In fact, the ALJ adopted these findings. (R. 124-25.) The issue, however, is whether these impairments equal a listed impairment. The ALJ gave "little weight" to Dr. Chadha's "opinion" that he does not "think" plaintiff can sustain full-time

5

employment due to her "mental health," and plaintiff does not direct us to any medical or other evidence that supports Dr. Chadha's conclusion that plaintiff is disabled. This lack of supporting evidence is why the ALJ was justified in affording Dr. Chadha's opinion "little weight."

Moreover, Dr. Chadha's statement is not, as plaintiff contends, consistent with the opinion of the consulting psychological examiner, Dr. Kieffer. After examining plaintiff, Dr. Kieffer concluded that plaintiff's "capacity for attention was within normal limits[,] her capacity for concentration was mildly impaired[,] . . . her fund of general information was good[,] . . . . [her] capacity for arithmetic calculation was somewhat impaired, her capacity for abstract conceptual reasoning was mildly impaired[,] and her capacity for social judgment was within normal limits." (R. 779.) Dr. Kieffer did not say, and her findings do not imply, that plaintiff is unable to work.

Nor, as plaintiff asserts, did the ALJ dismiss Dr. Chadha's "opinion" because he only treated plaintiff with medication. Rather, the ALJ simply pointed out that Dr. Chadha treated plaintiff with medication, but is not a psychiatrist and recommended that she seek psychiatric care. (*See* R. 139 ("There is no indication [that Dr. Chadha] treated the claimant for [her mental impairments] aside from prescribing medication for the claimant as he referred the claimant to psychiatry. . . ."); *see also* R. 870, 928, 947, 949, 976 (Dr. Chadha's notes saying, "I think she would benefit from psychiatry but she does not want to go at this time"; "She is planning on seeing a therapist"; "She is interested in seeing a psychiatrist. . . . [and] is trying to find the right one"; "She is planning to see psychiatry"; "She will see psyche.").)[2] The lack of more intensive treatment and/or oversight by Dr. Chadha of plaintiff's mental health issues belies the notion that Dr. Chadha considered them to be so severe that they constituted a disability. Indeed, Dr.

---

[2]The record does not contain treatment notes from a mental health professional, though plaintiff testified that a psychologist "dumped" her after a few sessions. (R. 45.)

Chadha's multi-year treatment records lack documentation supporting the conclusion that plaintiff is disabled by the diagnosed mental health issues. These stark omissions further support the ALJ's decision to give "little weight" to Dr. Chadha's opinion as to plaintiff's disability.

In short, the ALJ adequately explained his reasons for rejecting Dr. Chadha's opinion. Thus, the ALJ's assessment of that opinion is not a basis for reversing his decision.

Plaintiff also argues that the mental RFC is faulty because it does not mimic one of the doctor's opinions, and the ALJ failed to identify the evidence that supports it. The Court disagrees with both assertions. Though the RFC assessment relies on medical sources for support, it is ultimately a determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . , the final responsibility for deciding these issues is reserved to the Commissioner."); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) ("The determination of RFC . . . is an issue reserved to the SSA. In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions.") (citations omitted); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("The RFC assessment must be based on *all* of the relevant evidence in the case record . . . .") (emphasis in original). Thus, the ALJ's decision, based on plaintiff's testimony, to place greater restrictions on her mental RFC than those recommended by the agency doctors was not error.

Moreover, the ALJ adequately identified the evidence underlying his RFC assessment, including: (1) plaintiff's testimony "that she was able to engage in a wide range of daily activities," including babysitting a five-year-old child part-time, cooking, using public

transportation and Uber, creating computer videos and claymation, going out to the movies, reading, visiting with friends, and taking an out-of-state vacation (R. 126, 136, 138; *see* R. 24-35, 38-42, 966, 975); (2) the fact that she had not seen a psychiatrist (R. 138); (3) her "friend[ly], articulate and engaging [demeanor]" and ability to recall and relay information during the hearing (*id.*); (4) her college attendance (R. 126, 136); and (5) the opinions of the state agency physicians (*id.*; *see* R. 80-81, 103-05, 116-18). Thus, the mental RFC fashioned by the ALJ is not erroneous.

The next alleged error plaintiff cites is the ALJ's failure to consider the combined effects of her impairments on her ability to work. Specifically, plaintiff says the ALJ failed to consider "that [plaintiff's] panic attacks . . . may have exacerbated her asthmatic symptoms and may have precluded her from performing the six hours of standing and walking that was required of light work." (Br. Supp. Mot. Reverse Comm'r's Dec. at 16.) There is no evidence, however, that plaintiff's asthma attacks are caused or worsened by her anxiety. Moreover, though plaintiff testified that the potential for or occurrence of an asthma attack causes her anxiety, there is substantial evidence to support the ALJ's conclusion that plaintiff's anxiety, whatever its cause, imposes no more limitations on her ability to work than are incorporated in the RFC, *i.e.*, a moderate limitation with respect to concentration, persistence or pace. (*See*, *e.g.*, R. 24-36, 38-42, 80-81, 103-05, 116-18, 138, 778-79, 870, 928, 932, 947, 959, 964-66, 975.)

Plaintiff's next contention is that the ALJ erred in evaluating her credibility,[3] in part because he used language the Seventh Circuit has criticized as "boilerplate." (*See* R. 137 ("After

---

[3]The Commissioner has issued new guidance for evaluating symptoms in disability claims, which supersedes SSR 96-7p and "eliminat[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). However, the factors to be considered in evaluating symptoms under either SSR 96-7p or SSR 16-3p are the same. *Compare* SSR 96-7p, 1996 WL 374186 (July 2, 1996), *with* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.")); *see also Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010) (characterizing similar language as "meaningless boilerplate"). However, "[t]he use of boilerplate is innocuous when . . . the language is followed by an explanation for rejecting the claimant's testimony." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). Such is the case here. (*See* R. 136-38 (stating that plaintiff's: (1) medical records show that "[m]any of her conditions . . . [are] stable and/or able to be controlled with medication," she was "in no acute respiratory distress," had "normal clinical findings," "often denied depressive or anxiety symptoms," and had not "received the type of medical treatment one would expect for a totally disabled individual with depression/anxiety"; (2) description of her daily activities is inconsistent with her "allegations of disabling functional limitations"; and (3) demeanor and active participation during the hearing belied her allegations of highly impaired mental function).)

Alternatively, plaintiff argues that the ALJ's credibility determination is flawed because he did not specifically identify which of her allegations -- that she has panic attacks or reacts to cleaning products, for example -- that he found incredible. But the ALJ did not question the existence of plaintiff's impairments, *i.e.*, that she has asthma, allergies, and anxiety. (R. 124.) Rather, he questioned whether the combined effects of those impairments render her unable to work. The ALJ's failure to label as incredible specific episodes of plaintiff's illnesses does not doom his credibility analysis.

9

Plaintiff also argues that the ALJ relied too heavily on her activities of daily living to conclude that her conditions are not disabling. As plaintiff correctly notes, the Seventh Circuit has cautioned ALJs against concluding that claimants who can perform limited activities of daily living are able to hold down a job. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."). Here, however, the record shows that plaintiff has a far more robust range of daily activities than did the plaintiffs in *Bjornson* and similar cases. (*Compare* R. 25, 28-29, 34-35, 38, 41-43 (plaintiff testifying that she: (1) babysits part-time for a five-year-old; (2) "watch[es] a lot of movies and . . . read[s] a lot and . . . listen[s] to a lot of podcasts . . . and . . . like[s] making things like [c]laymations and . . . little videos and editing and things . . . [she] can do creatively."; (3) is able to cook and take public transportation, cabs, and Uber; (4) leaves the house to go to movies and see live music, attended classes at Truman College, and often has friends come to her house), *with Bjornson*, 671 F.3d at 647 (plaintiff was able "to walk up to one block, sit or stand for up to 15 minutes, lift 10 pounds, bathe and dress normally, and . . . drive and shop"); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (plaintiff was able to prepare meals for thirty to sixty minutes, dust and do laundry for about two hours with intermittent rest periods and her husband's help).

The concern described as "deplorable" in *Bjornson* (and amplified by a string cite to multiple other cases), is when an ALJ fails to recognize the flexibility and availability of assistance when performing daily functions versus the lack of such accommodations and the existence of minimum work standards in an employment setting. *Id.* at 647. In the instant case,

the ALJ focused on evidence of plaintiff's activities beyond minimum daily functions (*e.g.*, attending college and cultural events and applying creative skills through technology). This evidence supports the ALJ's conclusion that plaintiff can perform many activities that are inconsistent with disability (especially a disability premised on fatigue and mental health issues). Thus, there was no error in the ALJ's evaluation of plaintiff's symptoms in light of her report of daily activities.

Plaintiff's last argument is that, in evaluating her symptoms, the ALJ erred by considering plaintiff's failure to seek psychiatric treatment. Though failure to seek treatment is a valid consideration in determining credibility, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 16-3p, 2016 WL 1119029, at *8 (Mar. 16, 2016) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . , we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (same). Therefore, the ALJ should have asked plaintiff why she did not follow Dr. Chadha's recommendations to seek psychiatric care. Because, however, the ALJ's credibility determination did not hinge on this factor, his failure to do so was harmless. (*See* R. 138 (ALJ considered objective evidence of severity of asthma, plaintiff's description of her own daily

11

activities, medical treatment and records of treating physician inconsistent with severity of mental health issues described by plaintiff).)

**Conclusion**

For the reasons set forth above, the Court affirms the Commissioner's decision and grants her motion for summary judgment [16]. This case is terminated.

**SO ORDERED.**                    **ENTERED:  August 2, 2017**

_M. David Weisman_

**M. David Weisman**
**United States Magistrate Judge**